May it please the court. My name is Robert Bellis. I represent Stephen Jones who is presently incarcerated in a California institution in Solano doing life imprisonment. We believe he is an innocent man who was put there by an uncorroborated accomplice, a fellow named Flanagan. The issue has been briefed thoroughly, I believe. Also the issue of how we get before federal court on this is in our brief. Just to turn our attention briefly to the actual alleged corroboration, what we faced since the beginning of this case is that apparently the courts believe that Flanagan, the accomplice, was corroborated by a couple of key factors. One is this Lynn Tasha Barrett woman. So before we get to the merits, I guess the question for us is why isn't this just a state law error, a violation of Cal Penal Code section 1111, which under Swarthout v. Cook we can't really reach? Well, we did extensive work in our reply brief, I thought. And we cited that Marsh v. San and it kind of is the most recent case on this whole concept. When a state court creates a right, like in Hicks or in the Marsh case, the federal government has a right, has a duty to enforce it under the due process clause. So in this case you've got the state court creating the right under So what says that it's a liberty interest? So Cook had a two-step process. First it asks, is there a liberty or property interest of which the person has been deprived? And of course in Cook it was a question of parole, which is clearly a liberty interest. Has any case said, even LaBoa didn't say that it was a liberty or property interest. It said it was a state-created entitlement. What makes it a liberty or property interest? Well, in this case we believe it's a liberty interest because it's a key state statute that is how you apply and how you judge the testimony of an accomplice that took away my client's liberty for the rest of his life. But you agree there's no federal constitutional right to corroboration? Absolutely. I agree. I tried a case in the federal court. You don't get that. You do not get that instruction. Okay. So I want to go back to where Judge Ikuda was, but ask some questions about that. If there's no federal constitutional right, we have a state court here, the Court of Appeal, that says there was sufficient corroboration under California law. That's correct. Absolutely correct. Okay. How do we, as a federal court, review that decision? Well, it's arbitrary. Clearly if the Supreme Court of California had said this is enough evidence, you know, this is a case of first impression and this is enough evidence to corroborate, we would have no claim at all. Now we have a California court that says the quantum of evidence in this case is sufficient to corroborate, and you're saying you have a federal constitutional claim. What's your claim? The claim is that it's really an arbitrary decision that was made by the state court and the appellate court. It's an arbitrary taking away of my client's freedom. Okay. But why was it arbitrary? They point to, you were beginning to say, there is some evidence that the state court points to. It seems to me to be corroborative evidence. Are you arguing that it wasn't enough? Yes. I'm arguing it wasn't anything at all. And I'll give you just a couple of examples on that, if I could. And I won't, I know we're on the legal issue. We're also intertwining with the factual material. But the Natasha Barrett, which everybody points to, is corroborative. This is a woman who saw my client 60 miles away the day before, the night before in Club West in Eureka, 60 miles away from where the killing occurs, the next day way out on 299. I mean, that would be, and all that corroborates is that my client may have been associated with the person, Flanagan, who tells, who says that he was there. Well, so it corroborates part of the story that the, that the, that the person testifying against your client talks about. There's some DNA. Well, let me, I'll get to that. These are the two points. I mean, don't, I don't believe that first point does corroborate it. A good example of that is... It must, in your view, must, under California law, now we're not dealing with federal law, under California law, must the corroboration corroborate the very story of the crime, or can it corroborate other details of the informant's story? The former, the story of the crime, because corroborating other details is no corroboration at all. Again, we're dealing with California law. What California case do you cite for the proposition that corroborating other details is insufficient? Well, I only, I cite the statute, and we cite a number of cases in the brief that the, you've got to actually have independent evidence that corroborates the actual scheme that is the crime, the scheme that commits the crime, not just that you knew the person ahead of time. A good example would be if I'm standing, going downstairs, and I have a cup of coffee with somebody, and that person decides, and someone sees me in the, in this building, and that person decides to go to Sacramento and rob a bank the next day, that you, that the individual that saw me having coffee with that individual here in this building, you could say that there's something to do with that person who says I'm allegedly at the, it's not corroboration at all. I'm not sure that's right, but let's deal with the crime scene. Okay. There's, there's people who say that your client left the crime scene. Yeah, there's people, meaning Flanagan, who says my client fled the crime scene. So flight's no, that's a bootstrap argument that flight would corroborate it, because it's based on Flanagan's testimony. It's only his testimony that says my client left the crime scene. Isn't there another witness who says that your client left the crime scene? No, no, not really. No. There was this problem with this fellow, where they tried this case against Gordon earlier, you know, and they had this fellow Wexler, now this is not a certified issue, but Gordon is who's the driver of the vehicle, okay, and Wexler was an informant. The state of California tried them before our case, and in that case, Wexler was saying that he'd come on the stand, the prosecutor put him on, and he said Gordon was the shooter. So they start with this theory that a totally different man's a shooter. That's the state of California prosecutor's office doing that. They got, you got that in with Raines. Raines also said Gordon was the shooter. Wexler was cumulative, wasn't he? No, Wexler would have helped us a lot if we could have got Wexler. Well, of course, you'd have one more witness saying the same thing that Raines did. I think it would have been devastatingly impeaching of Flanagan, because that would have been an informant that heard Gordon say, I'm the shooter, but the judge wouldn't let it in under, no one understood the Crawford rule there, excuse me. I mean, that's a good point, but I don't think it's just cumulative. It would have been crucial. But I want to get, I want to just real quickly, one other thing, and that is on the corroboration. I mean, I really, this is what's offended us from the beginning. This thing with Lintasha is simply not real corroboration. The other one is, let's talk about, if Lintasha, real quickly, had heard my clients talking about a marijuana deal when he was in Eureka at some concert or something, that's different. That would have been it. But just seeing people together. The other one is this thing with the head wrap, okay? The head wrap incident, oh, my client's head wrap is in the back seat of the car, or a head wrap is my client's DNA. We'll say that, okay? And a cap is my client's DNA. And then there's some, now, nobody at the live witness at the scene, he doesn't say the guy that came out shooting had a head wrap on. If, in fact, the guy had a purple head wrap, and then a purple head wrap as well. I could go back to Cook for a minute. Because we're not sitting as an appeals court over the court of appeals determination as to whether there was enough corroborating evidence, are we? I mean, we have to decide if there's a due process violation. Isn't that right? I think they go together. I really think they go together. If you've got an arbiter. So Cook says, you know, if there was a liberty interest, and you were deprived of the liberty interest, were there fair procedures for you to argue against the deprivation? Were you deprived using fair procedures? And you had the ability to argue before the trial court and to appeal the ruling. So why doesn't that meet the Cook requirements for due process? Okay. I believe it doesn't meet it because the idea of the due process applying only to procedure, it's intertwined with substantive. I think it's just a word game when you call it one or the other. The Supreme Court said we couldn't look at whether there was substantial evidence in the parole or some evidence in the parole context. We couldn't reach the merits. We just looked at whether the prisoner had notice and an opportunity to be heard. So why could we reach the merits in this case? I don't understand. Okay. I'm going to try and answer that in my rebuttal. I've only got about a minute left. So I'm going to save that last minute. Thank you. May it please the court. My name is Catherine Chapman, and I represent the warden in this case. I think, in fact, it is clear that we're talking about a procedural due process claim here, not a substantive due process claim. And that being the case, I think, as argued in the briefs, Cook makes it clear what the scope of this court's review is. First, the question is whether there's a liberty interest at stake. Do you agree there's a liberty interest, the liberty interest in not being convicted on uncorroborated evidence? I don't for a couple of reasons. One being the United States Supreme Court has never said that California's rule gives rise to a liberty interest. And on federal habeas review, unless the United States Supreme Court has set out a very specific rule, provides a categorical answer, as Merzaint says, as Wright versus Van Patten say, there has to be a very specific rule for the state court to have found to misapply their law. And here there's not. Now, Appellant says that's too difficult because the United States Supreme Court can never get around to deciding all state procedural rules, whether they give rise to a liberty interest or not. That's true. It does make it difficult. That is the goal of 2254D. That's what Richter says. Didn't our court say in Loboa that it violates a criminal defendant's due process right to fundamental fairness if it arbitrarily deprives a defendant of a state law entitlement? And then they were talking about 1111 of the Penal Code. Well, in that case, they found enough corroboration, so that wasn't invoked. But is that statement of the law still good after Cook versus Swarthout versus Cook? I think there are a couple of problems with the reasoning in Loboa that have become clear after Cook. But don't you have to demonstrate to us that the Supreme Court has, in effect, destroyed the validity of Loboa? We don't assume overruling of our decisions by implications. Not just what the problems are. Tell us why it's inconsistent. Irreconcilable is the word we use. That's right. Howard, why are they irreconcilable? Well, first of all, I should say that you need not even consult Loboa to decide this case, because we are on federal habeas review. Your decision is guided entirely by the United States Supreme Court decisions. So there's no need to overrule Loboa. Well, Loboa was a habeas case, too. It was a post habeas case, and we are bound by that on our own habeas review. So same context as your case. It does apply the test for a liberty interest. But to the extent that it reached the merits and re-decided whether corroborating evidence supported the accomplished testimony, when you get to that point, that is plainly inconsistent with Cook. And that's where the district court found that it was inconsistent with Cook. And so I think it is a mistake to fall into the trap of coming full circle through the route of procedural due process and revisiting the merits of a decision that was, under all the United States Supreme Court jurisprudence in this area, a state court question. I know you're swinging for a home run, but let me ask you about singles here. What if we applied Loboa? Do you lose? No. No. And that's the ironic thing about this case. If you do come full circle... I don't know if that's ironic. I just want to know why you don't lose. I don't lose because there's an unusually strong corroboration of the accomplished testimony in this case. So if you do analyze it the way Loboa does, you come right up against, first of all, not going in chronological order, but going in order of strength of evidence, DNA evidence. There's a bloodstain in the backseat of the car that was used throughout the events leading up to during the crime and after the crime that clearly belongs to Mr. Jones. So we know he's in the car. We know he's in the car. And here's why that's... Or at least there's good evidence that he's in the car because of various DNA. But your theory is that he's the shooter. So what's the corroboration that he's the shooter? The corroboration that he's the shooter... Well, first of all, we don't have to corroborate that he's the shooter exactly. We have to have corroboration that ties him to the crime and at the same time makes it appear that the accomplice is telling the truth. We don't have to corroborate every element of the crime. But if I could just say... He's in the car, but that's not a crime. He's in the car. And if I might also point out the fact that his DNA is in the car is strong evidence because Flanagan borrowed the car from his father for the purpose of this particular trip. So it's not a situation in which you can say, Mr. Jones, oh, he might have been in the car another time. I assume it's strong evidence that he was in the car at the time of the shooting. What other corroboration do you have of Flanagan's account of the events? Okay. Well, going back to the beginning, there's also Mr. Jones' text messenger device and Flanagan's phone were both found in the car. There was a number saved to Flanagan's with the name Steve O. Later investigation by the detectives put the name Steve O together with Mr. Jones, Stephen Jones, by finding the insert that came with a CD from Mr. Jones' rat group. So there was communication between the two of them leading up to the trip. And then there was the testimony of Ms. Barrett who identified Mr. Jones and his other friend David Jones as being at the Club West venue the night before the crime, which is where Mr. Gonzalez said he met them and arranged the drug deal. We're still not talking about anything that corroborates the shooting. Yes. Well, several eyewitnesses described the shooting in exactly the same manner as Mr. Flanagan did. They said the man that was sitting in the back seat got out and pointed the gun at the disabled truck and fired. Now, they don't identify, I mean, these are not people who could identify Mr. Jones himself, but they do confirm the exact behavior by the person that was sitting in exactly the same location Mr. Flanagan said he was sitting in. And then Mr. Thurman, Mr. Gonzalez' father also described the back seat passenger as holding a gun out the window and waving it at him exactly as Flanagan described. So I thought Jones got the gun out of the back of the car, out of the trunk of the car. How could he be waving the gun before the shooting? I'm sorry, that was not before the shooting. When he was waving the gun outside the car, that was after they had left the shooting. Mr. Gonzalez' father was trying to head them off at one end of the bridge unsuccessfully. And then there's evidence of flight as well, which is evidence of a guilty conscious. I think we've gone over all the facts. Can I get back to Cook for a moment? Sure. So the second prong of Cook is when the state creates a liberty interest, then the due process requires fair procedures for its vindication. And we determine whether the application of the procedures were adequate for due process. What are the procedures in this case and why are they adequate? California law, well, California law itself just provides that you can't convict someone on the testimony of the accomplice without it being corroborated. To carry out the requirement of that statute, California provides jury instructions. And in this case, there were no less than five jury instructions given on the topic of the corroboration of accomplice testimony. First of all, under California law, the jury can be or they can be instructed that he's an accomplice as a matter of law. Here, the jury was instructed that Flanagan was an accomplice as a matter of law. So they clearly were going to read the rest of the instructions. And those instructions told them that they had to find corroboration. The instructions described what the corroboration had to be like. And so you're saying the jury instructions were adequate procedure, a fair procedure for vindicating the liberty interest in not being convicted by uncorroborated testimony. Absolutely. I mean, the jury instructions made sure that the jury was going to make this finding. And that, if anything, is what Mr. Jones had a right to, was to have the jury make this finding, that the accomplice testimony was corroborated, and that the jury was going to make this finding. But they would then view it with caution. But then in the end, California leaves it up to the jury to weigh that evidence and decide the credibility of the corroborating evidence. And that's the end of the matter. Thanks. If there are no other questions, thank you. I've only got a minute, so I've got to say something. Gonzalez is the only eyewitness to this event. He's the guy that the attempted murder was on. Gonzalez did not identify my client. Gonzalez was shown photographs. He identified four people. Three of them are the ones that are convicted. He also, he did not identify Jones, even though he, Stephen Jones, even though he saw it. He identified a guy named Williams. Williams was a good friend of Flanagan. Flanagan decided to not turn his good friend over. He put the case on Jones. Now, you're indicating that there's evidence he was in the car at the time of the crime. No. Let's just say he was in the car on the way up to Eureka from the Bay Area. That same, there's no evidence in this case when the DNA was there. That's the story of DNA. You can't tell when it got put there. That's a jury argument, isn't it? Aren't we looking at whether or not the evidence could be reasonably interpreted that way? It's a jury argument, but it's also flat out not real. It's not a jury argument. Now it's a judge argument for the Ninth Circuit judges here because it's actually, I'm saying there's no actual, you're bootstrapping it if you believe that there's actual corroboration here. There's no actual corroboration in the case. The pager that is referred to is a good example of that. The pager was never identified as my client. That's Flanagan saying. The pager or the electronic device that got the phone call. He's saying that. They didn't bring in the AT&T people or something to say that's registered to my client. The flight thing is based on him. Again, the head wrap. There's no evidence that anybody had a head wrap or a head cap or anything on at the time of the homicide. If you had a head wrap or a cap, don't you think Jones would be wearing it when he's out there supposedly shooting it? The shooter didn't have a head wrap. He didn't have a cap because it wasn't Jones. That's a fact of the matter. It wasn't Jones. And Jones is doing time in jail because Flanagan got his six years or whatever it was. And Jones got life on life and what have you as a shooter. So there really isn't corroboration. And I know the question about the instructions. That doesn't answer the question. Sure, California gives those nice instructions. I've tried those cases with those instructions. But if there really is no, that's why when the procedural and the substantive run together, if the procedure, sure, it was followed. But in fact, if you could take any example and say, but there really wasn't any corroboration, and if the jury found the man guilty and there's no corroboration, the judge should have thrown it out on 11-18, a motion for an acquittal. If he didn't, then the appellate court should have thrown it out or the Supreme Court of California should have taken it or the district court magistrate that made the findings who doesn't believe in the bow apparently or something. He should have made the findings. But no, now we're right here. We're for the judges and the Ninth Circuit Court of Appeals. And I have faith that you will make the right decision. Thank you very much. Thank you, counsel. And we thank both counsel for a very interesting presentation. And the case of Jones versus Arnold will be submitted.
judges: BEA, IKUTA, HURWITZ